612 So.2d 948 (1993)
John H. BLANQUE
v.
CITY OF NEW ORLEANS.
No. 92-CA-1313.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 1993.
*949 Leonard A. Washofsky, Metairie, for appellant.
William D. Aaron, Jr., City Atty., Randal L. Gaines, Asst. City Atty., Milton Osborne, Jr., Deputy City Atty., Brett J. Prendergast, Chief of Civ. Litigation, Kathy L. Torregano, Chief Deputy City Atty., New Orleans, for appellee.
Before SCHOTT, C.J., and PLOTKIN and LANDRIEU, JJ.
PLOTKIN, Judge.
The claimant, John Blanque, appeals the denial of worker's compensation indemnity benefits and statutory penalties. We reverse, render in part and remand in part.
FACTS:
John Blanque, a New Orleans Police officer, who has suffered many back injuries over the years, was involved in two car accidents in January of 1990. He complained of upper back pain and constant headaches from these accidents. For treatment, *950 Blanque saw Dr. Hoerner, an orthopedic specialist, and Dr. Newsom, a chiropractor. Blanque responded well to the treatments and was released by Dr. Newsom to return to active duty on March 7, 1990. Dr. Hoerner, who had examined Blanque on March 5, 1990, also reported that he was doing well and should continue his employment.
On March 8, 1990, Blanque was again injured while apprehending a suspect. He sustained injuries to his left hand and re-injured his upper back. On March 9, 1990, Blanque returned to Dr. Newsom and reported the injury to his back and received treatment. On March 15, 1990, Blanque once again met with Dr. Hoerner, who examined his hand injury; however, Blanque did not mention his back injury.
After approximately a month and a half of treatment under Dr. Newsom, Blanque still complained of headaches. Blanque was then referred to Dr. Karas, another chiropractor specializing in headaches, for further treatment. The treatments with Dr. Karas continued until November 2, 1990.
Blanque returned to Dr. Hoerner on May 7, 1990. On May 18, 1990, Dr. Hoerner, sent a letter to Ms. Clement, the claims representative who was handling Blanque's case for Rosenbush Claims Services. The letter stated that Blanque had not mentioned any back trouble on March 15, 1990, during Dr. Hoerner's first examination of Blanque after the accident. It also stated that Blanque had a history of continuing back trouble since 1983. Additionally, Dr. Hoerner felt that from an orthopedic standpoint there was no reason why Blanque could not return to full duty. With regard to the constant headaches, Dr. Hoerner recommended that Blanque see a neurologist. On this recommendation, Blanque began seeing Dr. Friedman, a neurologist, who began treating him for his headaches.
Upon receipt of Dr. Hoerner's letter of May 18, 1990, Ms. Clement, the Rosenbush representative, refused to pay any medical expenses incurred by Blanque except for the expenses incurred in treating his hand injury. Thus, none of the medical bills of Drs. Karas, Newsom or Friedman were paid by Rosenbush.
Blanque claims that as a result of his injury on March 8, 1990, he missed 18 weeks of work. However, no compensation indemnity payments were made to him by Rosenbush. Rosenbush again relied upon the letter of Dr. Hoerner, which cleared Blanque for duty on March 15, for denying any payments to Blanque. Blanque then sued the City of New Orleans seeking payment of his medical expenses, compensation indemnity for the time missed at work, and statutory penalties, including attorney's fees, for Rosenbush's arbitrary and capricious failure to pay the amounts due within 60 days.
After a hearing was held, the hearing officer ordered the City of New Orleans to pay the medical bills of Drs. Karas, Friedman and Newsom, as well as a small amount for prescription medication. The medical expenses were ordered paid because the hearing officer found an exacerbation of existing symptoms as a result of the March 8, 1990 accident. However, the Hearing Officer refused to award compensation indemnity because he found no medical testimony or report substantiating Blanque's claim that he was unable to work after the accident. Additionally, the hearing officer felt that Blanque's testimony was not "honest" and "straight-forward" concerning when the symptoms began or were aggravated. The hearing officer did not address the issue of statutory penalties in his order or his reasons for judgment. Blanque appeals the denial of compensation indemnity and statutory penalties, including attorney's fees.
COMPENSATION INDEMNITY:
Blanque missed a total of 18 weeks, intermittently, from the date of the accident through the end of September 1990. From March 12, 1990, to April 3, 1990, Blanque testified that he received one-third of his salary which the police department labeled as worker's compensation pay. The other two-thirds was to come from Rosenbush, but Blanque testified that he never received any payments. In order to receive a full salary for the other periods *951 that he missed, Blanque arranged to take his sick pay and vacation pay.
Blanque now argues that he is seeking an amendment of the Police Department's payment records to allocate the time that was assigned to vacation and sick leave to worker's compensation. Thus, Blanque is not seeking more money but simply a proper allocation of the amounts he received from the Police Department. The hearing officer denied Blanque any compensation indemnity benefits because he found no medical evidence substantiating the fact that Blanque was unable to engage in gainful employment due to work related injuries.
A pre-existing injury does not bar a claimant's recovery. Guillory v. U.S. Fidelity & Guaranty Ins. Co., 420 So.2d 119, 122 (La.1982). A claimant must, however, establish the aggravation of the pre-existing condition by a preponderance of the evidence. Hammond v. Fidelity Casualty Co. of N.Y., 419 So.2d 829 (La.1982). Additionally, a plaintiff's uncontradicted testimony should be accepted as true absent a sound reason for its rejection. Behmke v. K-Mart Corp., 581 So.2d 291 (La.App. 5th Cir.1991).
Dr. Newsom's letter of June 20, 1990, states that Blanque was suffering from suboccipital spasms and cervical fixations. He also states that Blanque was treated and cleared for this condition prior to March 8, 1990, but the symptoms returned after the accident. It was Dr. Newsom's opinion that Blanque's back condition existed prior to March 8, 1990, but was aggravated by the accident.
Dr. Karas testified that he started seeing Blanque on April 30, 1990. At this time Blanque was suffering from acute headaches, neck and back pain. He testified that Blanque's symptoms improved and that Blanque was cleared to return to work in August but by September 12 he had to leave work again. Treatments resumed and ended, for the purposes of this claim, on November 2, 1990. When asked whether he believed that the March 8 accident was the cause of pain for which he was treating Blanque, Dr. Karas answered in the affirmative. His answer is corroborated by a letter he wrote in August, stating that he felt the March 8 accident was the cause of the pain suffered by Blanque.
On cross examination Dr. Karas was presented with Blanque's history of back problems which started in 1983. While he agreed that the condition he treated may have initially been caused in 1983, he stated that it had never been treated properly. Thus, it was subject to reoccurrence. On re-direct examination Dr. Karas stated that although the condition may have been present prior to the March 8 accident, the accident served to aggravate or exacerbate the injury.
Dr. Friedman diagnosed Blanque as suffering from postconcussive syndrome and cervical musculoligamentous strain. Although Dr. Friedman did not specifically state that the cause of the condition he diagnosed was the March 8 accident, it is clear that he was treating a painful back condition at the time of his report. After treatment, on July 3, 1990, Dr. Friedman released Blanque to light duty for no more than four hours a day.
Clearly Blanque suffered from a painful back condition which was treated over several months by three separate physicians. Drs. Newsom and Karas both attributed the cause of the symptoms to the March 8 accident, which served to aggravate an existing condition.
The only evidence presented by the City of New Orleans to rebut the claim that Blanque suffered an aggravation of his back condition from the March 8 accident is the letter from Dr. Hoerner, who never examined Blanque for back injuries after the March 8 incident. The hearing officer, however, found no medical evidence to support a finding that Blanque could not work. We find this to be manifestly erroneous based upon the evidence presented by Blanque. Additionally, we cannot reconcile the hearing officer's conclusions that there was enough evidence to find that Blanque's back condition was aggravated for the purpose of medical expenses, yet there was not enough evidence to find that Blanque *952 was medically disabled for the purposes of compensation indemnity.
The hearing officer also stated in his reasons for judgment that Blanque's answers were not "straight-forward" and "honest." While the plaintiff's credibility is certainly a factor in determining whether an award should be granted, we find that there was sufficient other evidence to conclude that the March 8 accident aggravated Blanque's back condition. Therefore, an award of compensation indemnity is appropriate.
However, the amount due Blanque is unclear. Blanque argues that he only wants his record to indicate that he was paid worker's compensation rather than holiday or sick pay. The hearing officer found that Blanque's claim for indemnity amounted to a correction of four thousand nine hundred thirty-three dollars ($4,933.00). Thus, this amount will be used to correct the improperly labeled days. Unfortunately, this court finds it impossible to determine which days should be corrected because the Police Department's computerized payment record for the months in question is indecipherable. Therefore, this case is remanded for the purpose of determining the days that should have been designated as worker's compensation, but were instead classified as sick or vacation days. The trial court shall then order the Police Department, using the amount of $4,933 as a basis, to allocate those days to worker's compensation.
STATUTORY PENALTIES:
L.S.A.-R.S. 23:1201(E) provides that a twelve percent penalty is applicable to those employers or insurers who do not pay the claim within the required time period, which is normally less than 30 days.
An assessment of penalties is proper for the nonpayment of compensation benefits unless nonpayment results from conditions over which the insurer or employer had no control or unless the employee's right to such benefits had been "reasonably controverted." Holmes v. International Paper Co., 559 So.2d 970 (La. App. 2d Cir.1990). Employers, however, must demonstrate that reasonable efforts were made to medically ascertain the worker's exact condition before denying benefits. Id. 559 So.2d at 977. An employer has an ongoing duty to review medical reports concerning an injured employee's disability, and may not deny or discontinue compensation based on inconclusive medical reports. Allen v. Louisiana-Pacific Corp., 512 So.2d 556 (La.App. 3rd Cir. 1987).
Ms. Clement, the Rosenbush representative who handled Blanque's case, admitted during the hearing that the only reason she denied payment of the medical expenses and compensation indemnity was Dr. Hoerner's letter of May 18, 1990.
From this letter Ms. Clement apparently drew two separate conclusions. First, because Blanque had a history of back and neck problems, which were being treated right up to the point of the March 8 accident, the medical treatment Blanque was receiving for his back from Drs. Newsom and Karas was not related to the March 8 injury but instead to prior non-work related injuries. Second, because Dr. Hoerner stated that he had cleared Blanque for full duty, Blanque was well enough to work so he was not due compensation indemnity.
The March 8 accident report stated that Blanque had suffered injuries to his hand and upper back. Ms. Clement had a copy of this report. Once the claim forms from the other attending physicians were presented to Ms. Clement, she was under a duty to investigate to determine Blanque's exact medical condition. Holmes, supra. She is not allowed to rely on an incomplete medical report in deciding to deny or discontinue compensation benefits. Allen, supra. Not only did she fail to investigate, which she freely admits in her testimony, but the only evidence on which she based her conclusions was a report from a doctor who never examined Blanque's back regarding this injury. Therefore, penalties for failing to pay allowable compensation benefits within the statutory time limits are appropriate in this case. The hearing *953 officer agreed when he stated, while questioning Ms. Clement on why she failed to investigate Blanque's injury, "If I fine you, I'm going to hit you with penalties." Nevertheless, the hearing officer never mentioned penalties in his judgment.
Accordingly, statutory penalties of twelve percent will be imposed on the benefits awarded. As noted, the hearing officer found that Blanque's claim was in effect for four thousand nine hundred thirty-three dollars ($4,933.00). Therefore, Blanque is due five hundred ninety-one dollars and ninety-six cents ($591.96).
ATTORNEY'S FEES:
L.S.A.-R.S. 23:1201.2 provides that the insurer or employer must pay any claim due under the worker's compensation chapter within 60 days of receipt of written notice. If the employer or insurer capriciously or arbitrarily fails to pay the claim within 60 days they shall be liable for all reasonable attorney's fees for the collection of the claim. In this case, Blanque was denied all forms of worker's compensation from April 1990. For the reasons detailed above, the Rosenbush claims representative's failure to investigate Blanque's condition and her reliance on a doctor who never examined Blanque's back after the March 8 accident was unreasonable and arbitrary. Therefore, reasonable attorney's fees in the amount of four thousand dollars ($4,000.00) shall be awarded for services of the claimant's attorney at the trial court and on appeal.
CONCLUSION:
The decision of the hearing officer denying compensation indemnity is reversed. This case is remanded to determine which days must be corrected to reflect that worker's compensation was paid rather than vacation or sick pay. Additionally, The City of New Orleans is ordered to pay $4,000 in attorney's fees and $591.96 in statutory penalties. All costs of this appeal are assessed to the appellee.